IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| MYRA BROOKS, | * | |
| Plaintiff | | |
| | * | |
| vs. | | Civil Action No.   L-06-1527 |
| | * | |
| METROPOLITAN LIFE INSURANCE COMPANY | * | |
| and | * | |
| KPMG LLP EMPLOYEES LONG TERM DISABILITY PLAN, | * | |
| Defendants | * | |

**MEMORANDUM**

Now pending in this ERISA case is plaintiff Myra Brooks's ("Brooks") Motion to Augment the Administrative Record (Docket No. 20). According to Brooks, the record in this case is incomplete because it does not contain defendant Metropolitan Life Insurance Company's ("MetLife") internal claims processing guidelines. The parties have extensively briefed this issue, and the Court held a hearing on the motion on August 2, 2007. For the reasons stated herein, Brooks's motion is DENIED.

**I.    Background**

Brooks is a participant in the KPMG LLP Employee Long Term Disability Plan ("the Plan"), which is insured and administered by MetLife. She applied for and received long term disability benefits in May 2004, but her benefits were terminated later that year. She successfully appealed the Plan's determination, and her benefits were reinstated in January 2005.  In August 2005, however, the Plan again terminated Brooks's benefits and denied her appeal. Having exhausted her administrative

remedies, Brooks now seeks review of the Plan's decision.

## II. Discussion

The parties agree that our review of the Plan's decision to terminate Brooks's benefits is limited to the administrative record. See, e.g., Sheppard & Enoch Pratt Hosp., Inc. v. Travelers Ins. Co., 32 F.3d 120, 125 (4th Cir. 1994). "Generally, the Fourth Circuit defines the administrative record as those facts known to the administrator at the time the administrator made the benefits eligibility determination." Brodish v. Federal Express Corp., 384 F.Supp.2d 827, 823 (D.Md. 2005).

The parties disagree, however, about the scope of the administrative record, which currently consists of KPMG's plan documents and MetLife's "claim file" for Brooks's claim. According to Brooks, the administrative record should also include MetLife's Claims Management Guidelines (the "CMG"), an internal corporate database offering general guidance to claims-processing personnel.

In support of this argument, Brooks points to the regulations implementing the Employee Retirement Income Security Act of 1974 (ERISA). Pursuant to 29 C.F.R. § 2650.503(h)(2)(iii), a plan is required to furnish, upon a claimant's request, "all documents, records, and other information relevant to a claimant's claim for benefits." Information is "relevant" if it (i) was relied on in making the benefit determination; (ii) was submitted, considered, or generated in the course of the benefit determination; (iii) demonstrates compliance with required administrative processes and safeguards; or (iv) constitutes a statement of policy or guidance with respect to the plan concerning the denied treatment option or benefit for the claimant's diagnosis. See 29 C.F.R. § 2560.503-1(m)(8).

Brooks argues that the CMG is "relevant," and therefore part of the administrative record, because it "was undoubtedly relied upon or at least considered in the course of making the benefit

determination, or demonstrates compliance with the administrative processes and safeguards required under [the regulations implementing ERISA]." Pl.'s Mem. at 5. Brooks also points to three decisions[1] in which she contends that MetLife was ordered to produce its Best Practices Manual"[2] as authority for her assertion that the CMG is properly part of the record in this case. Id.

In response to Brooks's argument that the CMG was "undoubtedly relied upon or at least considered" in adjudicating her claim for benefits, MetLife has submitted the declaration of Laura M. Sullivan,[3] a manager with personal knowledge of MetLife's procedures for administering claims under group disability plans, including the plan now before the Court. According to Sullivan, "MetLife's practice is to note in the diary notes of the claim file when the CMG has been referred to in the course of adjudicating a claim." (Sullivan Declaration, ¶ 7). Based on her review of the claim file and discussions with the employees who processed the claim, Sullivan states that "the CMG were not referred to or otherwise used in the adjudication of [Brooks's] claim." Id.

Aside from speculative assertions that MetLife must have or should have consulted the CMG in determining her eligibility for benefits, Brooks has failed to present concrete evidence that the guidelines were "relied upon" or "submitted, considered, or generated" in reviewing her claim. Through the

---

[1] See Palmiotti v. Metropolitan Life Insurance Co., 2006 U.S. Dist. Lexis 8031 (S.D.N.Y 2006); Cohen v. Metropolitan Life Insurance Co., 2003 U.S. Dist. Lexis 4468 (S.D.N.Y 2003); and Doty v. Robert Bosch Corporation Long Term Disability Plan, 1:06-CV-225 (W.D.Mi. 2006).

[2] The "Best Practices Manual" is the predecessor to MetLife's CMG. See Def.'s Mem. at 3. ("[T]he Best practices manual was a document created by MetLife in the mid-1990s for consideration of claim adjudication procedures. [] In 1999, when the CMG came into effect, the Best Practices Manual became obsolete.")(Internal citations omitted).

[3] Docket No. 23, Exhibit A.

declaration of Ms. Sullivan, on the other hand, MetLife has declared under penalty of perjury that the Guidelines were not referred to in any way. Mindful that MetLife's decision to terminate Brooks's benefits is reviewed under the modified abuse of discretion standard,[4] the Court is unwilling to look behind Ms. Sullivan's sworn declaration without a stronger showing on Brooks's part.

Brooks also asserts that the CMG is relevant because it demonstrates compliance with the administrative processes and safeguards that plans must adopt pursuant to ERISA's implementing regulations. See 29 C.F.R. § 2650.503-1(m)(8)(iii); Id. § 2560.503-1(b)(5). Brooks reads the regulations too broadly. The Department of Labor (DOL) has made clear that the disclosure requirement Brooks seeks to invoke is limited to materials specifically generated in connection with a *particular* adverse benefit determination:

> "[S]ubparagraph (m)(8)(iii) provides that, among the information that a plan must provide a claimant... is any information that the plan has generated or obtained in the process of ensuring and verifying that, *in making the particular determination*, the plain complied with its own administrative processes and safeguards[.]" 26 Fed.Reg. at 70,252. (Emphasis supplied). See also Palmiotti v. Metropolitan Life Ins. Co           , 2006 WL

---

[4] "When an ERISA plan affords an administrator discretion, a court reviews the administrator's decision to deny benefits for abuse of discretion, asking whether the denial of benefits was reasonable[.]" Stup v. Unum Life Ins. Co. Of America, 390 F.3d 301, 307 (4th Cir. 2004). When an administrator both administers a plan *and* pays for benefits received by its members, however, its decision is reviewed under a "modified" abuse of discretion standard. "In these circumstances, we will not act as deferentially as would otherwise be appropriate[.] The fiduciary decision will be entitled to some deference, but the deference will be lessened to the degree necessary to neutralize any untoward influence resulting from [the administrator's conflict of interest.]" Id. (Internal quotations and citations omitted). Because MetLife is both the insurer and the administrator of KMPG's long term disability plan, its decision to terminate Brooks's benefits is reviewed under the "modified" abuse of discretion standard.

510387 (S.D.N.Y.).

Contrary to Brooks's assertions, the DOL anticipated that "plans will generally will have systems for ensuring and verifying consistent decisionmaking that may or may not result in there being disclosable documents or information pertaining to an individual claims decision." 26 Fed.Reg. at 70,252. Stated another way, the DOL has acknowledged that "relevant" compliance information may not exist with respect to every benefits eligibility determination. Such appears to be the case with respect to the termination of Brooks's disability benefits, at least as far as MetLife's CMG are concerned. According to the Sullivan declaration, the CMG were not considered in adjudicating Brooks's claim, and any reference to the CMG would have been noted in Brooks's claim file. (Sullivan Declaration, ¶ 7). In the absence of persuasive evidence to the contrary, we decline to hold that the CMG is "relevant" compliance verification material within the meaning of the DOL regulations.

Finally, Brooks points to a trio of cases in which she contends MetLife was ordered to disclose its "Best Practices Manual," the predecessor to the CMG. She also cites a fourth case, Levy v. Ina Life Ins. Co. of New York,[5] in which she asserts that Cigna was ordered to produce its claims manual. Pl.'s Mem. at 5-6.

These decisions are unpersuasive. As an initial matter, none of the cases Brooks cites are binding on this Court. Moreover, none of these decisions squarely address the question of whether a claims manual such as the CMG should be disclosed in the first instance. In Palmiotti, 2006 U.S. Dist. LEXIS 8031, Cohen, 2004 U.S. Dist. LEXIS 4468, and Levy, the Court was faced only with the

---

[5] 05 Civ. 10310 2006 U.S. Dist. LEXIS 83060 (S.D.N.Y. 2006).

question whether the manual was subject to a protective order. Similarly, although the Court in Doty technically ordered the defendant to supplement the administrative record with, *inter alia*, a copy of MetLife's Best Practices Manual, the defendant in that case failed to respond to the plaintiff's initial objections. 1:06-CV-225 (W.D.Mi. 2006). Finally, to the extent these decisions *do* suggest that a plan administrator's general claims processing guidelines are properly part of the administrative record, they are contrary to other authorities that have declined to order that such materials be disclosed. See, e.g., Bradford v. Metropolitan Life Ins. Co., 3:05-cv-00240 (E.D. Tenn. 2006); Platt v. Walgreen Income Protection Plan for Store Managers, et al, 3:05-cv-00162. (E.D. Tenn. 2005). ("Only to the extent the manual or guidelines were used to adjudicate the decision need [they] be produced"). Particularly as Brooks has failed to show that the CMG was used to adjudicate her claim, we embrace this latter approach.

**III.    Conclusion**

Brooks has not convinced the Court that MetLife's CMG were relied on or considered in adjudicating her claim for long term disability benefits. She is therefore unable to show that the CMG is "relevant" compliance verification material within the meaning of ERISA's implementing regulations. The authorities cited in her brief do not persuade the Court to the contrary. Accordingly, the Court will, by separate order, DENY her Motion to Augment the Administrative Record.

It is so ORDERED this 9th day of October, 2007.

/s/
Benson Everett Legg
Chief Judge